IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RUSSELL NEAL,
       Petitioner,

vs.                                   Case No. 3:09cv23/MCR/EMT

WALTER A. McNEIL,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

      Now pending is Respondent's motion to dismiss (Doc. 16) the amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 7).  Respondent seeks dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d).  Petitioner responded in opposition to the motion (Docs. 25).[1]

      This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The procedural background of this case is established by the state court record (Doc. 16, Exhibits).  Following a jury trial, Petitioner was convicted in the Circuit Court in and for Okaloosa County, Florida, of one count of using or allowing a child to engage in sexual performance, one count of promoting sexual performance by a child, one count of procuring a person under the age of eighteen (18) for prostitution, one count of living on the earnings of a prostitute, one count of

---

[1]Petitioner's assertion that Respondent's second service of the motion to dismiss on July 16, 2009, was "once more sent to the wrong address (e.g. Reception Medical Center, West, Lake Butler Fla.)" (Doc. 25 at 1) is unfounded. On July 16, 2009, the date Respondent re-served the motion (*see* Doc. 20), Petitioner's address of record was the Reception Medical Center, West Unit  (*see* Docs. 15, 19).  Petitioner did not file his notice of change of address to Calhoun Correctional Institution until July 20, 2009, according to the "mailbox rule" (*see* Doc. 21).  Therefore, Respondent re-served the motion to Petitioner's correct address, that is, his address of record.

renting space to be used for lewdness, assignation, or prostitution, one count of unlawful sexual activity with a minor, one count of possession of a controlled substance, and one count of possession of drug paraphernalia (Doc. 16, Ex. A-1).  Petitioner was adjudicated guilty and sentenced to a combination of consecutive and concurrent terms of imprisonment totaling sixty (60) years (*id.*).  Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal (First DCA).  In an opinion filed September 19, 2005, the First DCA vacated Petitioner's conviction and sentence on the unlawful sexual activity with a minor count, decreasing Petitioner's total term of imprisonment to forty-five (45) years, and otherwise affirmed the judgment (Doc. 16, Ex. A-2).  Neal v. State, No. 1D04-167, 910 So. 2d 929 (Fla. 1st DCA 2005).  The mandate issued October 6, 2005 (*see* Doc. 16, Ex. B).

On January 12, 2006, Petitioner filed a motion to recuse the trial judge from all post-conviction proceedings (*see* Doc. 7 at 2; Doc. 16 at 2 n.2, Ex. A, Progress Docket entry 1/12/2006).  Petitioner file a motion to voluntarily dismiss the motion, and the trial court granted the motion to dismiss on May 31, 2006 (*see* Doc. 16 at 2 n.2, Ex. A, Progress Docket entries 4/21/2006, 5/31/2006).  Petitioner refiled the motion to recuse on June 19, 2006, and he filed a motion to compel on July 10, 2006 (*see* Doc. 7 at 3; Doc. 16 at 2 n.2, Ex. A Progress Docket entries 6/19/2006, 7/10/2006).  The trial court denied both motions on August 1, 2006 (*see* Doc. 16 at 2 n.2, Ex. A, Progress Docket entries 8/1/2006).

On September 20, 2006, Petitioner filed a pro se petition for writ of habeas corpus in the First DCA asserting claims of ineffective assistance of appellate counsel (*see* Doc. 7 at 3C; Doc. 16 at 2, Ex. C).  The First DCA denied the petition per curiam on the merits on November 17, 2006 (*id.*, Ex. D).  Neal v. State, No. 1D06-4908, 942 So. 2d 446 (Fla. 1st DCA 2006).

On June 4, 2007, Petitioner filed a petition for writ of habeas corpus in the trial court (*see* Doc. 7 at 3A; Doc. 16 at 2–3, Ex. E).  In an order rendered July 5, 2007, the trial court dismissed the petition without prejudice to Petitioner's raising his claims in a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (*see* Doc. 16 at 3, Ex. F).

On July 26, 2007, Petitioner filed a Rule 3.850 motion in the trial court (*see* Doc. 7 at 3B; Doc. 16 at 3, Ex. L).[2]  On November 19, 2007, the trial court denied the motion (*id.*, Ex. M).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam

---

[2]One month prior, on June 21, 2007, Petitioner filed a "petition for writ of error coram nobis" invoking jurisdiction under Rule 3.850 in Walton County, Florida (*see* Doc. 16 at 3, Ex. G).  This petition challenged a 1991 conviction in Walton County, not the 2003 conviction in Okaloosa County that Petitioner challenges in the instant habeas action.

without written opinion on October 10, 2008, with the mandate issuing November 7, 2008 (*id.* at 3–4, Exs. O, P). <u>Neal v. State</u>, No. 1D08-454, 990 So. 2d 1066 (Fla. 1st DCA 2008) (Table).

On September 24, 2007, Petitioner filed a second pro se petition for writ of habeas corpus in the First DCA asserting claims of ineffective assistance of appellate counsel (*see* Doc. 7 at 3E). The First DCA denied the petition per curiam without written opinion on October 25, 2007 and denied Petitioner's motion for rehearing on December 4, 2007. <u>Neal v. State</u>, No. 1D07-4913, 969 So.1085 (Fla. 1st DCA 2007).

On December 7, 2007, during the pendency of the Rule 3.850 proceeding, Petitioner filed a petition for belated appeal in the First DCA (*see* Doc. 16, Ex. Q). The First DCA denied the petition on the merits on January 11, 2008 (*id.*). <u>Neal v. State</u>, No. 1D07-6186, 972 So. 2d 1023 (Fla. 1st DCA 2008).

On June 18, 2008, also during pendency of the first Rule 3.850 proceeding, Petitioner filed a second Rule 3.850 motion in the trial court (*see* Doc. 7 at 3I, 3M, 3O; Doc. 16 at 4, Ex. R). The court dismissed the motion for lack of jurisdiction due to the pendency of Petitioner's first Rule 3.850 motion (Doc. 16, Ex. S). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on April 7, 2009, with the mandate issuing May 5, 2009 (*see* Doc. 16 at 4, Exs. V, W). <u>Neal v. State</u>, No. 1D08-4082, 6 So. 3d 611 (Fla. 1st DCA 2009) (Table).

On September 16, 2008, again while the first Rule 3.850 motion was pending, Petitioner filed a motion to correct illegal sentence under Rule 3.800(a) of the Florida Rules of Criminal Procedure (*see* Doc. 7 at 3G; Doc. 16, Ex. A, Progress Docket entry 9/16/2008). The trial court denied the motion on March 17, 2009 (*see* Doc. 16, Ex. A, Progress Docket entry 3/17/2009). Petitioner appealed the decision to the First DCA, and the appellate court dismissed the appeal per curiam without written opinion on June 16, 2009, with the mandate issuing August 13, 2009 . <u>Neal v. State</u>, No. 1D09-1972, 13 So. 3d 60 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on January 9, 2009 (Doc. 1 at 44).

II.    ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review
> or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent contends Petitioner's judgment of conviction and sentence became final on December 18, 2005, upon expiration of the 90-day period for seeking certiorari review of the judgment of conviction by the United States Supreme Court (Doc. 16 at 2).  As the Supreme Court held in Jimenez v. Quarterman, "direct review cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts, and to th[e] [Supreme] Court [of the United States], has been exhausted." --- U.S. ----, 129 S. Ct. 681, 685–86, 172 L. Ed. 2d 475 (2009). Accordingly, a state prisoner's conviction becomes "final" for purposes of § 2244(d)(1)(A) when the United States Supreme Court denies certiorari, issues a decision on the merits, or after the 90-day period in which to seek certiorari review expires.  Jimenez, *supra*; Nix v. Secretary for the Dep't of Corrections, 393 F.3d 1235, 1237 (11th Cir. 2004) (holding that a Florida prisoner's conviction became final 90 days after the Florida district court of appeal affirmed his conviction); Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002) (holding that a Florida prisoner's conviction became final 90 days after the Supreme Court of Florida denied his motion for rehearing).[3]  Therefore, the undersigned concludes that Petitioner's conviction became final on December 18, 2005, upon expiration of the 90-day period for seeking certiorari review of  the conviction by the United States Supreme Court, and the federal limitations period expired one year later, on December 18, 2006.[4] Petitioner did not file his federal petition on or before December 18, 2006; however, he may be entitled to habeas review if the limitations period was tolled pursuant to statutory or equitable tolling principles.

---

[3]The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of "the highest court of a State in which a decision could be had."  28 U.S.C. § 1257(a); *see also* U.S. Sup. Ct. R. 13.1 (a petition for writ of certiorari may only be filed to review a judgment or order entered by a state court of last resort and must be filed within ninety (90) days of the action undertaken by such state court).

[4]Petitioner contends the appropriate statutory trigger for the federal limitations period is § 2244(d)(1)(B), that is, the date on which a State-created impediment to his filing was removed (*see* Doc. 25 at 5).  The circumstances he identifies as State-created impediments are the same circumstances he relies upon in support of his argument that he is entitled to equitable tolling of the limitations period.  The court addresses this argument at the conclusion of the equitable tolling analysis, *see infra*.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows that on January 12, 2006, Petitioner filed a motion to recuse the trial judge from all post-conviction proceedings (*see* Doc. 7 at 2; Doc. 16 at 2 n.2, Ex. A, Progress Docket entry 1/12/2006).  Respondent contends a motion for recusal does not seek review of the judgment of conviction and sentence; therefore, it is not a tolling motion for purposes of § 2244(d)(2) (*see* Doc. 16 at 2 n.2).

In determining whether the motion was "an application for State post-conviction or other collateral review with respect to the pertinent judgment," under § 2244(d)(2), the undersigned will first examine Eleventh Circuit precedent regarding tolling motions under § 2244(d)(2) and then examine the nature of a motion for recusal or disqualification.  *See* Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1295–96 (11th Cir. 2008) (examining nature of Rule 3.800(c) motion and recent precedent in determining that Rule 3.800(c) motion was not tolling motion under § 2244(d)(2)) (citing Bridges v. Johnson, 284 F.3d 1201 (11th Cir. 2002), Sibley v. Culliver, 377 F.3d 1196 (11th Cir. 2004)).

In Bridges v. Johnson, 284 F.3d 1201 (11th Cir. 2002), the Eleventh Circuit concluded that an application for sentence review under Georgia's procedure was not a tolling motion under § 2244(d)(2). 284 F.3d at 1204.  The Georgia procedure in O.C.G.A. § 17-10-6, which was separate from the direct appeal and state habeas procedures, allowed prisoners to seek review of their sentences by a three-judge panel which would determine whether a sentence was "excessively harsh" in light of the defendant's crime and prior criminal record.  *Id.* at 1203.

The court in Bridges emphasized that the goals of AEDPA's provisions include "(1) ensuring 'that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment,' and (2) serving 'the well-recognized interest in the finality of state court judgments.'"  *Id.* at 1203 (quoting Duncan v. Walker, 533 U.S. 167, 178–79, 121 S. Ct. 2120, 2127–28, 150 L. Ed. 2d 251 (2001)).  The Eleventh Circuit further noted that "'[t]he tolling provision of § 2244(d)(2) balances the interests served by the exhaustion requirement and the limitation period.'"  *Id.* (quoting Walker, 533 U.S. at 179).

Reading § 17-10-6 in light of AEDPA's goals, the Eleventh Circuit in Bridges concluded that the Georgia sentence review procedure did not constitute state post-conviction relief under § 2244(d)(2) "because it does not promote exhaustion by giving state courts the opportunity to

consider federal-law challenges to state court judgments, and it does not promote finality of state court judgments by reducing the time in which federal review is sought." *Id.* The Georgia sentence review procedure was "merely a means for comparing sentences to ensure accuracy." *Id.* The Eleventh Circuit agreed with the district court's observation that the "sentence review is not an attack on the constitutionality or legal correctness of a sentence or judgment in contrast to a direct appeal or habeas action." *Id.* at 1204 (quotation marks omitted). Thus, an application for sentence review in Georgia under § 17-10-6 was not a tolling motion under § 2244(d)(2). *Id.*

A motion to disqualify or recuse is governed substantively by Florida Statutes § 38.10 and procedurally by Rule 2.330 of the Florida Rules of Judicial Administration. *See* Lynch v. State, 2 So. 3d 47, 78 (Fla. 2008). Rule 2.330 provides that a motion to disqualify shall show that "the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge"; or that the judge is either an interested party to the matter, related to an interested party, related to counsel, or "is a material witness for or against one of the parties to the cause." *Id.* (quoting Fla. R. Jud. Admin. 2.330(d)); *see also* Fla. Stat. § 38.10. Thus, Rule 2.330, pursuant to which Petitioner filed his numerous motions to recuse (*see* Doc. 7 at 3G, 3M) explicitly provides a procedure to disqualify the trial judge assigned to the case; it does not provide a procedure for raising a legal challenge to a conviction or sentence.[5] Disqualification of a trial judge assigned to a case is not an attack on the constitutionality or legal correctness of a sentence or judgment, in contrast to a direct appeal, habeas action, or proceeding to set aside a conviction or correct an illegal sentence. Thus, Petitioner's motions for recusal under Rule 2.330, filed January 12, 2006, and June 19, 2006, were not tolling motions under § 2244(d)(2).

Petitioner's next post-conviction filing was a "motion to compel," filed July 10, 2006, after 203 days of the federal limitations period elapsed (*see* Doc. 16, Ex. A, Progress Docket entry 7/10/2006). A copy of this filing was not included in the state court record. Giving Petitioner the benefit of the doubt, the court will assume, without deciding, that this motion qualified as a tolling motion under § 2244(d)(2). This motion was pending until August 16, 2006, upon expiration of the fifteen-day period for filing a motion for rehearing (*see id.*, Progress Docket entry 8/1/2006), thus the federal time clock resumed the next day, on August 17, 2006.

On September 20, 2006, after another 34 days of the limitations period elapsed, Petitioner filed a pro se petition for writ of habeas corpus in the First DCA asserting claims of ineffective

---

[5]It appears that Petitioner was aware of this, as evidenced by the fact that in instances when Petitioner filed motions to recuse, he did so in conjunction with other post-conviction motions requesting substantive relief. For example, Petitioner's motion to recuse filed on June 19, 2006, was filed in conjunction with a "motion to compel" (*see* Doc. 16, Ex. A, Progress Docket entries 6/19/2006 and 7/10/2006). Petitioner's motion to recuse filed on September 16, 2008, was filed in conjunction with a motion to correct illegal sentence (*id.*, Progress docket entries 9/16/2008).

assistance of appellate counsel. Respondent concedes this was a tolling post-conviction application (*see* Doc. 16 at 2). The petition was pending until December 2, 2006, upon expiration of the fifteen-day period for filing a motion for rehearing (*see* Doc. 16, Ex. D; Fla. R. App. P. 9.330(a)), thus the federal time clock resumed on December 3, 2006.

On June 4, 2007, Petitioner filed a petition for writ of habeas corpus in the trial court; however, this petition was filed after an additional 183 days of the federal limitations period ran. Thus, it was filed after the one-year limitations period had already expired (203 days + 34 days + 183 days = 420 days).[6] Because that petition and Petitioner's subsequent post-conviction applications were filed after the federal limitations period expired, they did not toll the limitations period. *See* <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir. 2000). Therefore, Petitioner's federal petition, filed January 9, 2009, was untimely.

In Petitioner's response to Respondent's motion to dismiss, Petitioner contends he is entitled to equitable tolling of the limitations period. In support of his equitable tolling argument, as well as his claim of actual innocence, Petitioner provided a fifty-one (51) page "Statement of Facts," which is verbose and somewhat repetitive (*see* Doc. 24 at 6–57). The following are assertions gleaned from those pages which are relevant to the issue of whether Petitioner is entitled to equitable tolling and whether he has made a colorable showing of actual innocence.

Petitioner contends he is entitled to equitable tolling of the federal limitations period for several reasons. First, he asserts his counsel on direct appeal has refused to provide him a copy of his trial transcript, thereby frustrating his efforts to file a properly supported Rule 3.850 motion (Doc. 25 at 16–50). Petitioner states he last requested the transcript in a letter to the public defender's office dated August 7, 2008, but he received no response (*id.* at 16–17, Attachment #1). Petitioner asserts he sent volumes of "legal notes, documents and letters concerning his cause" to an attorney and friend, whom Petitioner believed could obtain a copy of his trial transcript and assist him in obtaining post-conviction relief, but the attorney was unable to assist him due to his own health issues (*id.* at 20–24, 28–29, 33–34, 48–50). Petitioner states during this time he also sought a copy of the transcript by filing various petitions and motions in the state courts, but his requests were denied (*id.* at 37).

Additionally, Petitioner alleges that various circumstances have resulted in his being denied access to institutional law libraries and his legal notes and documents. He asserts that throughout his detention, both pre-trial and post-conviction, he has suffered from glaucoma and other vision

---

[6]The federal limitations period expired on April 10, 2007, one hundred twenty-eight (128) days after the first state habeas proceeding concluded (203 days + 34 days + 128 days = 365 days).

problems (*see* Doc. 25 at 12–13, 17–19). He states that during his pre-trial detention at the county jail, he was not provided adequate medical treatment for his condition, and he was not provided an adequate set of prescription eyeglasses until July of 2004, shortly after he entered the Florida Department of Corrections (DOC) (*id.* at 19). He states that since May of 2004, he has been transferred every 3–6 months to various institutions for medical treatment for his eyes, and during these transfers his access to a law library and his legal materials is "severely restricted" (*id.* at 17, 28–29, 40–42, 44–46). Petitioner additionally states that since his incarceration, he has been the subject of improper conduct by prison officials, including "trumped up" disciplinary actions, threats, and beatings, which resulted in his placement in confinement, where he was separated from his legal work and denied access to the law library (*id.* at 17–18, 29–33, 35–36, 38, 42–43). With regard to one of the alleged beatings that occurred on July 9, 2005, Petitioner states he suffered blindness and debilitating pain in his right eye as a result of the beating and lack of medical care following the beating, and the continuing pain limits his endurance with regard to preparing legal work (*id.* at 30–33, 41, 44–45, 52–53, 56–57). Petitioner also contends he has been denied adequate legal assistance at several institutions. He states he requested assistance from institutional law clerks, but has been denied assistance because he cannot financially afford their services (*id.* at 39). He also requested that prison officials provide him training to be an institutional law clerk, but his requests were denied (*id.* at 39). Petitioner states the law library at Calhoun Correctional Institution, where he has been housed at various times over the past three years, was inadequate to serve the population of inmates until 2008 (*id.* at 40–41, 54).

"Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). However, equitable tolling is an extraordinary remedy that is applied sparingly; indeed, it is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also* Wade v. Battle, 379 F.3d 1254, 1264–65 (11th Cir. 2004) (quoting Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) and Sandvik, *supra*). "The focus of the inquiry regarding 'extraordinary circumstances' is 'on the circumstances surrounding the late filing of the habeas petition' and not on the circumstances of the underlying conviction, and whether the conduct of others prevented the petitioner from timely filing." Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006) (quoting Helton, 259 F.3d at 1314–15) (other citations omitted)). The burden of establishing entitlement to this extraordinary remedy rests with Petitioner. Wade, *supra*; Drew, *supra*.

Initially, Petitioner has failed to show that his appellate counsel's failure to provide a copy of his trial transcript prevented him from filing a Rule 3.850 motion. The form used to file a Rule 3.850 motion in Florida state courts contains instructions requiring the movant to "[s]tate concisely every ground on which you claim that the judgment or sentence is unlawful" and "[s]ummarize briefly the facts supporting each ground." Fla. R. Crim. P. 3.987 (model form for use in motions for post-conviction relief pursuant to Rule 3.850). The detailed instructions say nothing about attaching trial transcripts. Furthermore, despite not having the transcript, Petitioner filed a Rule 3.850 motion in July of 2007 and a second Rule 3.850 motion in June of 2008. Therefore, Petitioner has failed to show that his attorney's failure to provide the trial transcript prevented him from pursuing post-conviction relief. Accordingly, Petitioner is not entitled to equitable tolling of the limitations period based upon his counsel's failure to provide him a copy of the trial transcript. *See, e.g.*, Powe v. Culliver, 205 Fed. Appx. 729, 734–35 (11th Cir. 2006) (affirming district court's determination that petitioner was not entitled to equitable tolling based upon counsel's failure to provide trial transcript where form used to file post-conviction application did not require filing transcript, and petitioner failed to articulate specific reasons for which transcript was necessary, nor did he point out information in transcript that was outside knowledge he already had of trial proceedings; thus, there was substantial evidence in the record to support district court's finding that petitioner did not act with due diligence).[7]

Additionally, Petitioner's assertions that he was unable to timely file his federal petition due to vision problems, medical transfers to treat the vision problems, stays in restricted confinement, and lack of accessible, adequate institutional legal assistance and law libraries, are insufficient to show that he diligently attempted to file a timely federal petition but was prevented from doing so. Initially, institutional transfers, periods of confinement under more restrictive conditions than general population, and lack of ready access to legal paperwork and law libraries are not "extraordinary circumstances"; they are usual incidents of prison life. Additionally, review of this court's docket shows that Petitioner has been <u>actively</u> litigating in this court since his conviction became final in December of 2005, initiating three civil actions in January of 2006. *See* Complaint, Neal v. Sheppard, et al., No. 3:06cv4/LAC/EMT (N.D. Fla. Jan. 3, 2006); Complaint, Neal v. Cassiday, et al., No. 3:06cv8/RV/MD (N.D. Fla. Jan. 3, 2006); Complaint, Neal v. Slocomb, et al., No. 3:06cv17/MCR/EMT (N.D. Fla. Jan. 12, 2006). According to the dockets in those cases, Petitioner diligently filed documents throughout 2006 and 2007 in those cases, prior to expiration

---

[7]The undersigned cites Powe v. Culliver only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* 11th Cir. R. 36-2.

of the limitations period for filing his federal habeas petition; yet Petitioner has not shown he made any attempt, let alone a diligent effort, to file a federal habeas petition during that time or to determine the applicable limitations period. Therefore, Petitioner has failed to show he exercised due diligence in attempting to file a timely federal petition. Accordingly, Petitioner is not entitled to equitable tolling of the limitations period due to his medical condition, institutional transfers, placement in confinement, and lack of access to his legal papers and institutional legal assistance.[8] *See, e.g.,* Paulcin v. McDonough, 259 Fed. Appx. 211, 213 (11th Cir. 2007) (equitable tolling not warranted because transfer to county jail and denial of access to legal papers and law library did not constitute extraordinary circumstances, and petitioner failed to allege how his inability to obtain legal materials thwarted his efforts to file timely federal proceeding); Bell v. Sec'y, Dept. of Corrections, 248 Fed. Appx. 101, 104–05 (11th Cir. 2007) (prisoner did not show diligence because there was no evidence that prisoner attempted to access the prison library or determine the applicable limitations period until after it expired); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("Mr. Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims. . . . It is not enough to say that the Minnesota facility lacked all relevant statutes and case law or that the procedure to request specific material was inadequate.").

Finally, to the extent Petitioner attempts to overcome the time bar by contending he is innocent of the crimes, he has failed to make a sufficient showing of actual innocence. The Eleventh Circuit has not decided whether a showing of actual innocence creates an exception to the AEDPA's statute of limitations in order to prevent a possible violation of the Suspension Clause. Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218–19 (11th Cir. 2000); *see also* Melson v. Allen, 548 F.3d 993, 1002–03 (11th Cir. 2008), *cert. denied*, — S. Ct. —, 2009 WL 2160589 (U.S. 2009) (noting that Eleventh Circuit has not decided whether the Constitution requires an actual-innocence exception to AEDPA's limitations period). To avoid answering that difficult constitutional question until

---

[8]To the extent Petitioner contends these circumstances constitute unconstitutional State action which impeded his timely filing, thereby qualifying him for a later commencement date of the federal limitations period, pursuant to § 2244(d)(1)(B) (*see* Doc. 25 at 5), he has failed to show that any of these circumstances actually prevented him from filing his federal petition on time. To show an impediment which would trigger the later commencement date for the one-year period, Petitioner must demonstrate both actual harm or injury, that is, that he was actually prevented from exercising his right of access to courts to attack his sentence or conditions of confinement, and that the impediment was unconstitutional because not "reasonably related to legitimate penological interests." Akins v. United States, 204 F.3d 1086, 1090 (11th Cir. 2000) (quoting Lewis v. Casey, 518 U.S. 343, 361, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)) (other citations omitted). As previously discussed, the circumstances alleged by Petitioner did not prohibit him from actively litigating three civil rights actions in this court during the same period that his federal habeas time clock was ticking. Therefore, he has failed to demonstrate he was actually prevented from exercising his right of access to courts to attack his conviction and sentence during the running of the federal limitations period.

necessary, the Eleventh Circuit has held that before addressing whether the AEDPA's limitations period constitutes a violation of the Suspension Clause in the case of a claim of actual innocence, the court should first consider whether the petitioner can show actual innocence. Wyzykowski, 226 F.3d at 1218–19.

In a related context, the Supreme Court has held that in order to avoid a procedural bar based on successive habeas petitions and have his petition heard on the merits, a habeas petitioner asserting actual innocence must show that constitutional error "probably resulted" in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 324, 326–27 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id.

The Schlup Court went on to make several observations about this standard. With respect to the term "probably resulted," the Court clarified that, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., 513 U.S. at 327, 330 (emphasis added). With respect to the term "reasonable juror," the Court instructed: "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." Id., 513 U.S. at 329. Additionally, it is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623–24, 118 S. Ct. 1604, 1611–12, 140 L. Ed. 2d 828 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19, 120 L. Ed. 2d 269 (1992)).

As previously noted, Petitioner was convicted of one count of sexual performance by a child, one count of promoting sexual performance by a child, one count of procuring a person under the age of eighteen (18) for prostitution, one count of living on the earnings of a prostitute, one count of renting space to be used for lewdness, assignation, or prostitution, one count of possession of a controlled substance, and one count of possession of drug paraphernalia (Doc. 16, Ex. A-1). Petitioner states his criminal charges arose from his involvement in a "website/agency" known as Pleasuregirls.biz (Doc. 25 at 6). Petitioner states he reported criminal activity of Ms. Kimberly Gayle Clark Hunter to the Okaloosa County Sheriff's Department, but county officials did not

pursue criminal charges against her (Petitioner attributes this to Ms. Hunter's beauty, as well as corruption in the Sheriff's Department) and instead pursued criminal charges against Petitioner, based upon Ms. Hunter's allegations that he was engaged in criminal activity involving Pleasuregirls.biz (*id.* at 6–9, 78). Petitioner denies that he promoted any criminal activities, or that any criminal activities involving the "promotional agency" were ever witnessed or substantiated (*id.* at 7–8, 77). He states Ms. Hunter did not testify against him (*id.* at 9). He further asserts no one involved with the agency was ever accused of, charged with, or arrested for prostitution, solicitation, or any other related act (*id.* at 7). He states drug use was not tolerated, and any illegal acts by any persons associated with the agency resulted in "suspension" from the agency and immediate termination of any promotional activities concerning that person (*id.* at 7–8). Petitioner denies that any willful criminal acts were conducted "on his watch," and he states he took every possible precaution to ensure that the conduct of the agency's "talent" was legal (*id.* at 8).

Additionally, Petitioner contends law enforcement illegally searched and seized personal property from his home on April 30, 2003, the date of his arrest (*id.* at 9–11). He states he was forced to provide information regarding the location of his home to officers without first speaking to an attorney (*id.* at 10). He also states his property was never properly inventoried (*id.* at 11). Petitioner additionally contends the charging document was deficient (*id.* at 77).

Initially, Petitioner's claims of an illegal search of his home and seizure of his property, the alleged <u>Miranda</u> violation, and his challenges to the sufficiency of the charging document and the evidence relate to the legal sufficiency of his conviction, not his factual innocence of the crimes; therefore, these allegations are insufficient to satisfy the <u>Schlup</u> standard. Additionally, Petitioner's general denial that he engaged in or was aware of any criminal activity, devoid of any factual support in the form of new reliable evidence that was not presented at trial, is insufficient to constitute a credible claim of actual innocence. Therefore, Petitioner has failed to make a sufficient showing of actual innocence to qualify for the actual innocence exception to the time bar, assuming *arguendo* that such exception exists.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.    That Respondent's motion to dismiss (Doc. 16) be **GRANTED**.

2.    That the amended petition for writ of habeas corpus (Doc. 7) be **DISMISSED** with prejudice as untimely.

At Pensacola, Florida, this 15<u>th</u> day of October 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; **United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**